IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHERINE BLUMENKRON, an                    No. 3:20-cv-00422-HZ
individual; DAVID BLUMENKRON, an
individual; SPRINGVILLE INVESTORS,          OPINION & ORDER
LLC, a limited liability company,

               Plaintiffs,

   v.

ANYELEY HALLOVA, ROBIN
MCARTHUR, CATHERINE MORROW
KATIE PEARMINE, GERARDO
SANDOVAL, and STUART WARREN,
all in their official capacities as a member
of the Land Conservation and Development
Commission; SAM CHASE, SHIRLEY
CRADDICK, CRAIG DIRKSEN, JUAN
CARLOS GONZALEZ, CHRISTINE
LEWIS, LYNN PETERSON, and BOB
STACEY, all in their official capacities as
Metro councilors; and MULTNOMAH
COUNTY

               Defendants.

Christopher James
The James Law Group, LLC
5201 SW Westgate Drive, Suite 111
Portland, OR 97221

       Attorney for Plaintiff

Christopher A. Gilmore
Nathan D. Sramek
Multnomah County Attorneys
501 SE Hawthorne Blvd., Suite 500
Portland, OR 97214

Jill Schneider
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

Caroline E.K. MacLaren
Roger A. Alfred
Office of Metro Attorney
600 NE Grand Avenue
Portland, OR 97232

       Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiffs Katherine Blumenkron, David Blumenkron, and Springville Investors, LLC,

bring this 42 U.S.C. § 1983 and state law action against Defendants Anyeley Hallova, Robin

McArthur, Catherine Morrow, Katie Pearmine, Gerardo Sandoval, and Stuart Warren, all in their

official capacities as members of the Oregon Land Conservation and Development Commission

("State Defendants"); Sam Chase, Shirley Craddick, Craig Dirksen, Juan Carlos Gonzalez,

Christine Lewis, Lynn Peterson, and Bob Stacey, all in their official capacities as Metro

councilors ("Metro Defendants"); and Multnomah County alleging Oregon's Land Reserves

Statute, and Defendants' designation of Plaintiffs' property as rural reserve under the statutory

scheme, violate Plaintiffs' Equal Protection and Due Process rights under the Fourteenth

Amendment to the U.S. Constitution and Equal Protection rights under Article I, Section 20 of

the Oregon Constitution. Currently before the Court are Defendants' Motions to Dismiss

Plaintiffs' Amended Complaint. The Court grants Defendants' Motions.

**BACKGROUND**

In 2007, Oregon passed SB 1011, codified at Oregon Revised Statute §§ ("O.R.S.")

195.137–195.145 ("Land Reserves Statute"), defining urban and rural reserves and authorizing

Metro and Clackamas, Multnomah, and Washington Counties to jointly and concurrently

designate urban and rural reserves in the Portland metropolitan area. Am. Compl. ¶¶ 1, 24, ECF

11. Under the Land Reserves Statute, Metro and the counties may enter into intergovernmental

agreements to designate lands as urban reserves for a period of at least 20 years but not more

than 30 years beyond the 20-year urban growth boundary ("UGB") planning period. *Id.* at ¶ 27.[1]

Urban reserves are areas designated for future expansion of the UGB, whereas land designated as

rural reserve are foreclosed from future changes in use, development, or inclusion in the UGB

for a period of at least 40 to 50 years. *Id.* at ¶¶ 1, 27-28.

Urban reserves are defined as lands outside the UGB that will provide for "future

expansion over a long-term period" and "cost-effective provision of facilities and services within

the area when the lands are included within the [UGB]." O.R.S. 195.137(2). Rural reserves are

defined as "land reserved to provide long-term protection for agriculture, forestry or important

natural landscape features that limit urban development or help define appropriate natural

boundaries of urbanization, including plant, fish and wildlife habitat, steep slopes and

---

[1] Regulations applying the Land Reserve Statutes to the Portland metropolitan area state: "Urban reserves designated under this division shall be planned to accommodate estimated urban population and employment growth in the Metro area for at least 20 years, and not more than 30 years, beyond the 20-year period for which Metro has demonstrated a buildable land supply inside the UGB[.]" Or. Admin. R. 660-027-0040(2).

floodplains." O.R.S. 195.137(1). The Oregon Land Conservation and Development Commission ("LCDC") was tasked with "adopt[ing] by goal or by rule a process and criteria" for designating urban reserves and rural reserves. O.R.S. 195.141(4); O.R.S. 195.145(7). LCDC adopted regulations prescribing "criteria and factors that a county and Metro must apply when choosing lands for designation as urban or rural reserves." Or. Admin. R. ("O.A.R.") 660-027-0005(1), 660-027-0050, 660-027-0060.

Under the statute and regulations, each county is authorized to designate rural reserves within their respective borders and Metro is authorized to designate urban reserves within its metropolitan regional area. Both Metro and a county must agree to the designation of land as urban or rural reserve within that county. O.R.S. 195.141, 195.143(2)-(3), 195.145. LCDC is tasked with overseeing the process by ensuring that Metro and the counties properly apply the factors via periodic review of the final decisions. LCDC's standard of review is to determine "whether there is substantial evidence in the record as a whole to support the local government's decision." O.R.S. 197.633(3)(a). LCDC's final order adopting the counties' and Metro's designations is directly appealable to the Oregon Court of Appeals. Judicial review is limited to the administrative record and the appellate court "[m]ay not substitute its judgment for that of the [LCDC] as to an issue of fact." O.R.S. 197.650-197.651.

Plaintiffs' properties, together comprising 76 acres, were included in a study area of approximately 2,500 acres situated in Multnomah County. Am. Compl. ¶ 3. In December 2009, the Multnomah County Board of County Commissioners ("County Board") adopted a resolution by a 5-0 vote recommending that the study area not receive a reserve designation (neither urban reserve nor rural reserve). *Id.* On February 25, 2010, the County Board changed course and, by vote of 3-2, adopted an intergovernmental agreement with Metro that designated the full study

area containing Plaintiffs' properties as rural reserve. *Id.* In explaining the change, one Metro Councilor noted that she had considered numerous communications from constituents who overwhelmingly supported a rural reserve designation. *Id.* at ¶¶ 3, 64.

At the public forum preceding the County Board's vote, Plaintiffs and other interested parties were each allocated less than five minutes to present testimony regarding the proposed urban and rural reserves designations. *Id.* at ¶ 57. Plaintiffs presented evidence that various government entities were able and willing to provide urban services to the area, as well as other evidence that supported an urban reserve designation for that area. *Id.*

Multnomah County adopted Ordinance 1161 on May 13, 2010, which approved the urban and rural reserve designations and stated reasons and conclusions for the various designations. *Id.* at ¶ 70. Metro then held a public hearing on the urban and rural reserve recommendations on May 20, 2010. *Id.* at ¶ 74. On June 3, 2010, Metro passed Ordinance No. 10-1238A formally adopting Clackamas, Multnomah, and Washington Counties' urban and rural reserve designations without change. *Id.* at ¶ 75. Plaintiffs allege Multnomah County's and Metro Defendants' decisions to designate their property as "rural reserve was not based upon consideration of the applicable urban and rural reserve factors, but was instead based upon personal and political considerations, caprice, and impermissible deal-making." *Id.* at ¶ 65.

In October 2010, LCDC held a four-day public hearing on the reserve designations to review objections, hear argument from parties, and decide what action to take in response to the objections. *Id.* at ¶ 81. LCDC remanded two areas to Metro and Washington County for further consideration. LCDC approved the remaining designations submitted by Metro and the counties, including the rural designation for area 9B (the area containing Plaintiffs' properties) in Multnomah County. *Id.* at ¶ 82.

After Metro and the counties resubmitted their reserves designations, LCDC held a public hearing in August 2011. *Id.* at ¶ 83. LCDC voted to acknowledge Metro's and the counties' revised submittals in their entirety. *Id.* Later that month, LCDC issued "Compliance Order 12-ACK-001819 (the 'First Acknowledgement Order')," acknowledging the urban and rural reserves submittal. *Id.* at ¶ 84. Plaintiffs allege "LCDC did not know, nor seek to determine, the location or boundaries of Area 9B when it reviewed the decisions of Metro and Multnomah County . . ., nor when it reviewed and rejected Plaintiffs' objections to that designation" because the First Acknowledgement Order "set forth a description of Area 9B that is incorrect." *Id.* at ¶ 85.

On February 27, 2012, Plaintiffs filed an action in this Court challenging their rural reserve designation. *Id.* at ¶ 87. This Court abstained "from litigating in this federal forum any of the state-law land use issues relating to the designation of urban and rural reserves" as established by Oregon statutes and administrative rules and concluded Plaintiffs did not "allege sufficient facts to state a claim" under 42 U.S.C. § 1983 on their Fourteenth Amendment Equal Protection claim. *Blumenkron v. Eberwein*, No. 3:12-CV-00351-BR, 2013 WL 786211, at *9-10 (D. Or. Mar. 1, 2013). Plaintiffs and multiple other parties also appealed the First Acknowledgment Order to the Oregon Court of Appeals. *Id.* at ¶ 88. The Oregon Court of Appeals ordered LCDC to remand the entirety of Washington County's reserves designations for reconsideration. *Barkers Five, LLC v. Land Conservation and Dev. Comm'n*, 261 Or. App. 259, 364 (2014) ("*Barkers Five I*"). The Court of Appeals also determined that LCDC erred in approving Multnomah County's reserves designation for area 9D, which does not include Plaintiffs' properties. But the court ordered LCDC to determine the effect of that error on the designations of reserves in Multnomah County as a whole. *Id.*

In response to *Barkers Five I*, on April 1, 2014, the Oregon Legislature passed HB 4078, which established reserves designations in Washington County and made other land designated as urban reserve part of the UGB. *Id.* at ¶ 90. On March 16, 2015, LCDC remanded several areas to Metro and Multnomah and Clackamas Counties for "further action consistent with the principles expressed in *Barkers Five*." *Id.* at ¶ 91.

In September 2015, this Court again dismissed Plaintiffs' constitutional claims regarding the rural and urban reserve designations and granted Defendants' motions for summary judgment. *Blumenkron v. Eberwein*, No. 3:12-CV-00351-BR, 2015 WL 5687869, at *9 (D. Or. Sept. 28, 2015), *aff'd*, 715 F. App'x 633 (9th Cir. 2017). In light of LCDC's remand and *Barkers Five I*'s requirement to reconsider the region as a whole, this Court found that Plaintiffs' claims were not ripe for judicial review. *Id.* The Court granted Plaintiffs leave to renew their claims after a final decision regarding the urban and rural reserve designations in the Portland metropolitan area was issued. *Id.*

On May 4, 2017, Multnomah County held public hearings on remand of the designation of Area 9D as rural reserve and its effects on the urban and rural reserve designations in the county as a whole. Plaintiffs submitted new evidence in support of an urban reserve designation for Area 9B and offered written testimony objecting to Multnomah County's proposed Ordinance No. 1246 on grounds that the county's designation of Area 9B was in error and contradicted by evidence in the existing record. *Id.* at ¶ 104. Plaintiffs also argued the rural reserve designation violated their constitutional rights to due process and equal protection. *Id.* Ordinance No. 1246, adopted on June 1, 2017, reaffirmed all reserves designations previously adopted by Multnomah County. Am. Compl. ¶ 109.

On June 15, 2017, Metro passed Ordinance No. 17-1405, which adopted Multnomah County's new findings and reserves designations. *Id.* at ¶ 110. In July 2017, Metro submitted the new reserves designations, which were identical to those approved by the LCDC in 2012, to LCDC for review ("Remand Submittal"). *Id.* at ¶ 111, 112. Plaintiffs objected to their properties' rural reserve designation on assertions of bias, political interference, failure to apply the applicable factors and criteria, failure to follow the applicable rules, and violation of Plaintiffs' due process and equal protection rights under the U.S. Constitution. *Id.* at ¶ 113. Plaintiffs also argued that Metro and Multnomah County improperly analyzed Area 9B in conjunction with the adjacent Areas 9A and 9C. *Id.*

On November 17, 2017, LCDC held a public hearing on Metro and the counties' Remand Submittal. *Id.* at ¶ 115. A representative for LCDC displayed a map at the hearing that lumped Areas 9A-C together as a single area without identifying or distinguishing the boundaries or specific location of Area 9B. *Id.* at ¶ 116. Testimony by objecting parties, including Plaintiffs, was limited to ten minutes. *Id.* at ¶ 118. On May 16, 2018, LCDC issued Compliance Acknowledgement Order 18-ACK-001894 ("Second Acknowledgement Order"), rejecting every objection to the remand submittal, including Plaintiffs' assertion that Multnomah County and Metro violated their rights to due process and equal protection. *Id.* at ¶ 121. On October 9, 2019, the Oregon Court of Appeals affirmed the Second Acknowledgment Order, rejecting Plaintiffs' assignments of error without discussion. *Barkers Five, LLC v. Land Conservation & Dev. Comm'n* ("*Barkers Five II*"), 299 Or. App. 726 (2019).

Plaintiffs initiated this action on March 13, 2020. Compl., ECF 1. In their Amended Complaint, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging Defendants violated their Fourteenth Amendment due process and equal protection rights. Am. Compl., ECF 11.

Specifically, Plaintiffs allege Defendants violated their equal protection rights by designating their land as rural reserve while designating similarly situated land as urban reserve, failing to properly apply the designation factors, basing their rural designation on impermissible deal making and political considerations, and refusing to redraw the area containing Plaintiffs' land in a manner that would facilitate an urban reserve designation. Plaintiffs claim Defendants violated their substantive and procedural due process rights by failing to afford them "a high level" of process in making the reserves designation, designating their properties as rural reserve in contravention of the applicable factors and evidence, and denying Plaintiffs' right to seek a variance, develop their properties, or receive municipal services for 40 to 50 years. In addition, Plaintiffs allege that the Land Reserves Statute and accompanying regulations are facially unconstitutional. Am. Compl. ¶¶ 125-146, 150-169, 173-203.

Plaintiffs also bring equal protection claims under the Oregon Constitution against Metro Defendants and Multnomah County. *Id.* at ¶¶ 147-49, 170-172. Plaintiffs seek wide-ranging forms of declaratory and injunctive relief principally aimed at redesignating their land as urban reserve and invalidating Oregon's land reserves designation scheme as a whole. Plaintiffs also seek special and compensatory damages of no less than $50,000 per acre, attorneys' fees, and costs.

Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (6).[2] Defendants also ask the Court to abstain from exercising its jurisdiction in this case.

---

[2] State Defendants, Metro Defendants, and Multnomah County separately move to dismiss but join in each other's motions. Where applicable, the Court discusses the arguments as they apply to Defendants generally.

**STANDARDS**

### I.    Rule 12(b)(1)

A motion to dismiss brought pursuant to Rule 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal quotation omitted). Additionally, the court may consider evidence outside the pleadings to resolve factual disputes. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier*, 106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court). A challenge to standing is appropriately raised under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)") (emphasis omitted); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.").

## II.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

## I.    Article III Standing

Federal courts are courts of limited jurisdiction, and as a preliminary matter, a plaintiff must satisfy the "case or controversy" requirement of Article III of the U.S. Constitution to maintain a claim in this forum. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Cetacean*

*Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). If the Court does not have an actual case or controversy before it, it lacks authority to hear the matter in question. *Lyons*, 461 U.S. at 101. "Standing is a core component of the Article III case or controversy requirement." *Barnum Timber Co. v. EPA*, 633 F.3d 894, 897 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing pertains to the federal courts' subject matter jurisdiction and is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler*, 598 F.3d at 1122; *see also Cetacean Cmty.*, 386 F.3d at 1174 ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.").

The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 856, ---,136 S. Ct. 1540, 1547 (2016); *Lujan*, 504 U.S. at 560. To establish an injury in fact, a plaintiff must show that "he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1547-48 (internal quotation omitted). A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). At this stage in the proceedings, a plaintiff need only "show that the facts alleged, if proved, would confer standing." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

Defendants assert that Plaintiffs lack constitutional standing to seek declaratory, injunctive, and economic relief. Metro Mot. Dismiss 13, ECF 19.

### A. Standing to Assert Claims for Damages

Plaintiffs' Amended Complaint seeks special and compensatory damages, including loss of property value that Plaintiffs assess at no less than $50,000 per acre. Am. Compl. ¶¶ 180, 185, 191. Plaintiffs claim that the "designation of their property as a rural reserve, rather than urban reserve," reduces the present value of their property. Am. Compl. ¶ 123. Defendants allege that Plaintiffs cannot establish an economic injury-in-fact because their claim lacks sufficient specificity and "relies on a chain of speculative contingencies." Metro Mot. Dismiss 30. Defendants note that "even if plaintiff's property were designated as an urban reserve rather than a rural reserve, there would still be no guarantee that the property would be considered for purposes of urban growth boundary expansion." *Id.* Thus, according to Defendants, any potential increase in property value from an urban reserve designation is speculative. Defendants argue that foreclosure of a hypothetical possibility of a future benefit is not an injury-in-fact. Metro Def. Reply 4.

On a 12(b)(1) motion to dismiss, the Court may consider items outside the pleadings, but must "resolve all disputes of fact in favor of the non-movant." *Dreier*, 106 F.3d at 847. Along with asserting that their property value would increase by $300,000 per acre if included in the UGB, Plaintiffs claim that the *present* value of their property has diminished by $50,000 per acre as a result of the change from undesignated to rural reserve. Am. Compl. ¶ 123; Pl. Resp. Metro Mot. 9, ECF 25. Plaintiffs' allegations of economic harm due to lost property value is a sufficient injury for purposes of Article III standing. *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (noting that "alleged financial loss is a sufficient injury in fact"). Defendants' assertion that Plaintiffs have only suffered a speculative loss fails because Plaintiffs have claimed loss in property value of a specific dollar amount. Any challenge

Defendants may have to Plaintiffs' alleged present economic loss is a factual dispute not properly resolved at this stage of the proceedings.

### B. Standing for Equitable Relief

Standing to seek damages does not automatically ensure that a plaintiff has standing to seek injunctive or declaratory relief. *See Lyons*, 461 U.S. at 111 (declaring that a pending damages suit does not necessarily afford a plaintiff Article III standing to seek an injunction). In the context of injunctive relief, a plaintiff "must demonstrate a real or immediate threat of irreparable injury." *Clark*, 259 F.3d at 1007 (quoting *Cole v. Oroville Union High Sch*. 228 F.3d 1092, 1100 (9th Cir. 2000)). Standing for prospective relief and ripeness under Article III are closely related. For a suit to be ripe within the meaning of Article III's "case or controversies" requirement, it must present "'concrete legal issues, presented in actual cases, not abstractions.'" *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947) (*quoting Elec. Bond & Share Co. v. Sec. & Exch. Comm'n*, 303 U.S. 419, 443 (1938)). In the context of due process claims, courts "require a final decision by the government which inflicts a concrete harm upon the plaintiff landowner." *Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 568-69 (9th Cir. 1988), *cert. denied*, 489 U.S. 1090 (1989). The finality requirement necessitates a "final and authoritative determination[.]" *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 (9th Cir.), *amended*, 830 F.2d 968 (9th Cir. 1987) (citation omitted). Before a decision is final, the landowner must have submitted at least one formal development plan and sought a variance from any regulations barring development. *Id.* at 1454-55; *Herrington*, 857 F.2d at 569.

Plaintiffs seek injunctive relief restraining Defendants from enforcing the rural reserve designations and requiring Plaintiffs' property to be designated as urban reserve. Plaintiffs allege that they are suffering an injury to their rights to seek future land use changes that would permit

development of their property. Although Plaintiffs' rural reserve designation does not prohibit

them from seeking changes or variances to develop their property, the designation does prohibit

Multnomah County and Metro from approving certain land use changes for 40 to 50 years.

Plaintiffs do not allege that they have current plans to modify use of their property, nor do they

allege that they have submitted and been denied a land use application due to their rural reserve

designation. Instead, Plaintiffs argue that they should not have to "pointlessly submit land use

applications that cannot . . . be granted under the rural reserve rules." Pl. Resp. Metro Mot. 8.

(emphasis omitted).

Defendants argue that the rural reserve designation has no concrete or actual impact on

Plaintiffs until they apply for and are denied a zoning variance. Defendants assert that "the rural

reserve designation does not prohibit plaintiffs from seeking anything." Metro Mot. Dismiss 21

(internal quotation omitted). Defendants are correct that Plaintiffs have no valid claim of injury

based on speculative future development of their land. The rural reserve designation did not

change the rights Plaintiffs have in their property; it preserved the rights they already had. The

rural reserve designation only prevents Plaintiffs from obtaining variances from development

restrictions to their land that were already in place at the time of the designation. In addition,

even if Plaintiffs' property had been designated as urban reserve, there is no guarantee the

property would be brought into the UGB and zoned for development. However, to the extent that

Plaintiffs claim the rural reserve designation is the injury itself because of their property's

present loss in value, they sufficiently allege an ongoing injury-in-fact that is fairly traceable to

Defendants' actions and is irreparable without a change in designation. The alleged injury could

be redressed by the injunctive relief Plaintiffs seek.

Plaintiffs also seek a declaration that the reserves designation scheme as a whole and as applied to Plaintiffs violates their constitutional rights to equal protection and due process. Am. Compl., Prayer for Relief ¶ a. A plaintiff who has standing to seek damages for a past injury, or injunctive relief for a future injury, does not necessarily have standing to seek a declaratory judgment. *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Defendants rely on *Mayfield* to assert that Plaintiffs lack standing to seek declaratory relief because a declaration of unconstitutionality would not redress Plaintiffs' injuries. In *Mayfield*, the Ninth Circuit held the plaintiff lacked standing to seek a declaration that portions of the Foreign Surveillance Intelligence Act were facially unconstitutional. *Id.* at 972-73. The court emphasized that a declaratory judgment would not require the government to act in a way that would redress the plaintiff's injuries. *Id.* But here, unlike in *Mayfield*, a declaration that Defendants' land use plan is unconstitutional would compel Defendants to take certain action. Defendants would have to withdraw an unconstitutional rural reserve designation for Plaintiffs' property, which based on Plaintiffs' allegations, could increase the property value and redress Plaintiffs' claimed injury.[3] Construing all factual allegations in Plaintiffs' Amended Complaint as true, the Court finds that Plaintiffs have alleged sufficient injury-in-fact to assert standing to seek both damages and equitable relief.

---

[3] The Court notes that it would not have the authority to order Defendants to confer a particular land use designation to Plaintiffs' property. However, construing Plaintiffs' factual allegations as true, if the change from undesignated to rural reserve decreased Plaintiffs' property value, withdrawal of the rural reserve designation and reversion to undesignated could conceivably redress Plaintiffs' injury by causing their property value to increase.

II.   **Facial Constitutional Claims**

Plaintiffs allege that Oregon's urban and rural reserves laws and regulations, both on their face and as applied to Plaintiffs, violate the Fourteenth Amendment Equal Protection and Due Process Clauses. Am. Compl. ¶¶ 192-197. The Court addresses the facial claims as a threshold matter. For a statutory scheme to be unconstitutional on its face, it must be "unconstitutional in all its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). A state land use scheme can only be facially unconstitutional if there are "no set of circumstances" in which the laws and regulations would be valid. *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Therefore, by definition, if the Court finds Oregon's urban and rural reserves laws and regulations are facially unconstitutional, such laws would also be invalid as applied to Plaintiffs and their property.

Facial challenges are disfavored because they "short circuit the democratic process by preventing laws embodying the will of the people from being implemented." *Id.* at 451. Federal courts are particularly reluctant to invalidate state and local land use laws. *See Izzo v. Borough of River Edge*, 843 F.2d 765, 769 (3d Cir. 1988) ("Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong."). The Ninth Circuit has noted that federal courts should generally refrain from disrupting local land use regulations. *Laurel Park Cmty., LLC v. City of Tumwater,* 790 F. Supp. 2d 1290, 1296 (W.D. Wash. 2011), *aff'd*, 698 F.3d 1180 (9th Cir. 2012).

The statutory scheme in question here is Oregon's statewide framework codified in the Land Reserve Statute, which authorizes cities, counties, and regional areas to develop comprehensive plans to ensure coordinated land use planning. O.R.S. §§ 195.137–195.145. The statutes direct counties and metropolitan service districts to identify land within their

jurisdictions that is either appropriate for future urban development or should be reserved as forest and farmland. These coordinated local land use designations are subject to oversight and review by the state LCDC. Under LCDC administrative rules, Metro along with the three Portland area counties must apply certain factors and coordinate with each other to formally designate specific areas as urban or rural reserves. O.A.R. 660-027-0005, *et seq.*

### A.  Equal Protection

Plaintiffs allege Oregon's Land Reserve Statute facially violates the Fourteenth Amendment Equal Protection Clause by treating similarly situated landowners differently. Am. Compl. ¶¶ 131, 152, 179. In their facial equal protection challenge, Plaintiffs claim Defendants' land use scheme allows "similarly situated property to be designated either urban or rural reserve without regard to the difference in property rights occasioned by each designation[.]" Am. Compl. ¶ 194.

A law that violates equal protection must operate to disadvantage some suspect class of persons or impinge upon a fundamental right protected by the Constitution. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1 (1973). Federal courts will generally uphold a law that "neither burdens a fundamental right nor targets a suspect class . . . so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Plaintiffs do not allege they are members of suspect class. And zoning and land use issues do not implicate fundamental rights. *Christian Gospel Church v. San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990). So, to succeed on a facial equal protection challenge to Oregon's urban and rural reserves scheme, Plaintiffs must show that the Land Reserve Statute and regulations lack a rational basis for treating certain property differently. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Oregon's stated goal of providing greater certainty for private landowners, providers of public

services, and agricultural and forest industries provides a rational basis for its long-range land

use planning framework. O.R.S. 195.139. Plaintiffs' complaint includes a conclusory statement

that Defendants provide no rational justification for their land use scheme. Am. Compl. 194.

Because Plaintiffs allege no facts that suggest a lack of rational basis for the scheme as whole,

they state no viable claim that Oregon's land use planning scheme violates equal protection on

its face.

### B. Substantive Due Process

Plaintiffs also allege the urban and rural reserve laws and regulations "deprive

landowners of property rights without due process." Am. Compl. ¶ 197a. Plaintiff's complaint

states that the urban and rural reserve designations are "based on a set of factors that are so

ambiguous that they cannot be applied fairly." Plaintiffs reason that, when applying those

factors, a particular property could conceivably be designated as either rural reserve or urban or

could remain undesignated. *Id.*

Yet the possibility of different outcomes for individual parcels of land does not by itself

provide a basis for a substantive due process claim. To violate substantive due process,

particularly for land use regulation, government action must be clearly arbitrary and irrational.

*Kawaoka*, 17 F.3d at 1234. Laws and regulations that violate substantive due process must have

no legitimate purpose. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008)

("The irreducible minimum of a substantive due process claim challenging land use regulation is

failure to advance any governmental purpose."). Oregon regulations state:

> Urban reserves designated under this division are intended to facilitate long-term
> planning for urbanization in the Portland metropolitan area and to provide greater
> certainty to the agricultural and forest industries, to other industries and commerce,
> to private landowners and to public and private service providers, about the

locations of future expansion of the Metro Urban Growth Boundary. Rural reserves under this division are intended to provide long-term protection for large blocks of agricultural land and forest land, and for important natural landscape features that limit urban development or define natural boundaries of urbanization. The objective of this division is a balance in the designation of urban and rural reserves that, in its entirety, best achieves livable communities, the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents.

O.A.R. 660-027-0005(2) (stating the purpose of the rules promulgated under O.R.S. § 195.143).

Because the statute and regulations state a legitimate government purpose, Plaintiffs' substantive due process claim fails. To state a claim for a facial substantive due process violation, Plaintiffs must allege that under the Land Reserves Statute and accompanying regulations, rural and urban designations could not be made rationally in any set of circumstances. Plaintiffs do not make that claim.

### C.  Procedural Due Process

Plaintiffs also allege that Oregon's urban and rural reserve laws and regulations facially violate procedural due process. To establish a violation of procedural due process a plaintiff must demonstrate that she had a constitutionally protected interest and was deprived of that interest by a constitutionally defective procedure. *Shanks v. Dressel,* 540 F.3d 1082, 1090 (9th Cir. 2008). A protected property interest arises from a legitimate claim to entitlement, but not from an abstract desire for a particular benefit. *Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).* In the land use context, when governing regulations afford decisionmakers significant latitude, plaintiffs have no legitimate claim of entitlement to a particular result. *Or. Ent. Corp. v. City of Beaverton*, No. 3:03-1432-JE, 2005 WL 839562 *2, aff'd, 233 F. App'x 618 (9th Cir. 2007); *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Here, to assert a facial procedural due process claim against the Land Reserve Statute, Plaintiffs must claim that in no set of circumstances could property owners have received a fair process when their property is designated as rural reserve. Plaintiff's own experience illustrates why their claim fails.

Under the Land Reserve Statute and regulations, the procedures for determining and designating urban and rural reserves are extensive. Prior to making initial rural and urban reserve designations, Metro and the counties collect information, solicit input from various sources, and hold public hearings. Property owners are offered an opportunity to provide input at county pre-designation public hearings. After each county adopts an ordinance approving urban and rural reserve designations, Metro and the counties must confer and enter into intergovernmental agreements. Property owners can also present evidence at public hearings before Metro adopts the counties' reserves designations. Once Metro and the counties formally adopt the reserves designations, LCDC holds a public hearing to hear and review objections from property owners and other interested parties. After LCDC approves the designations and issues an Acknowledgement Order, property owners have the right to appeal their properties' rural or urban reserves designations to the Oregon Court of Appeals.

Given the limited claim of entitlement that owners of property outside the UGB have to a particular land use designation, the process affords property owners ample procedural safeguards. Plaintiffs cannot assert that the urban and rural reserves designation process deprives owners of a constitutionally protected interest in all applications. For that reason, Plaintiff's complaint fails to state a claim that the Land Reserve Statute and regulations violate procedural due process on their face.

Accordingly, Plaintiffs facial constitutional challenges to Defendants' urban and rural reserve designation scheme are dismissed.

## III.    As-Applied Constitutional Claims

### A.  Sovereign Immunity for State Defendants

State Defendants argue that Plaintiffs' claims against them must be dismissed because they are immune from suit under the Eleventh Amendment. State Mot. Dismiss 5-6, ECF 16. Generally, suits against state officials in their official capacities cannot be brought under 42 U.S.C. § 1983 because such state officials are not "persons" within the meaning of the statute. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Nonetheless, state officials sued in their official capacities for prospective relief, as opposed to compensatory damages, are "persons" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).

Plaintiffs' Amended Complaint seeks special and compensatory damages against State Defendants in their official capacities, including loss of property value that Plaintiffs assess at no less than $50,000 per acre. Am. Compl. ¶ 191. Plaintiffs also seek declaratory and injunctive relief from ongoing violations of federal law that are properly characterized as prospective in nature. State sovereign immunity bars claims against State Defendants for money damages. On this basis, the Court grants State Defendants' motion to dismiss as to money damages, but not as to equitable relief. The individually named State Defendants are proper parties for equitable

relief because they are being sued in their official capacity. *See Wilcox v. Batiste*, 360 F. Supp. 3d 1112, 1119 (E.D. Wash. 2018) ("The legal fiction of the *Ex parte Young* action allows citizens to enjoin state action that violates federal law notwithstanding the protections of the Eleventh Amendment"); Rule 25(d) (noting a "public officer who is a party in an official capacity" is "automatically substituted" by her successor).

### B. *Burford* Abstention

Defendants argue that the Court should abstain from granting relief "that would interfere with state land-use policies." Mult. Cnty. Mot. Dismiss 11, ECF 18. *Burford* abstention 'is concerned with protecting complex state administrative processes from undue federal interference.'" *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (quoting *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1404 (9th Cir. 1991)). Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Even so, abstention doctrines constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred upon it. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). The United States Supreme Court has explained that a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies when there are difficult questions of state law bearing on policy problems of substantial public import, or where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*"NOPSI"*), 491 U.S. 350, 361 (1989).

Under the *Burford* abstention doctrine, a court may "decline to rule on an essentially local issue arising out of a complicated state regulatory scheme" if: (1) the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; (2) the federal issues cannot be easily separated from complex state law issues with respect to which state courts might have special competence; and (3) federal review might disrupt state efforts to establish a coherent policy. *United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) (citing *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982)).

The first *Burford* factor is met here because Oregon has concentrated suits involving challenges to reserves designations in the Oregon Court of Appeals. *See* O.R.S. 197.650–651. Plaintiffs allege that the Oregon Court of Appeals is not a forum that can provide adequate state court review because judicial review under O.R.S. 197.651 is limited in scope and does not provide for discovery or examination of witnesses. Those allegations do not negate the fact that, for purposes of "maintain[ing] consistency in a complex area of law," Oregon has established a "system of concentrated judicial review" in the Oregon Court of Appeals, which plays a pivotal role in the state's land use system. *Privitera v. California Bd. of Med. Quality Assur.*, 926 F.2d 890, 895 (9th Cir. 1991); *see also* O.R.S. 197.650 (direct review of LCDC's orders), 197.850(3) (direct review of opinions issued by the Oregon Land Use Board of Appeals).

The second and third *Burford* factors are also met as to Plaintiffs' as-applied federal equal protection and due process claims because those claims are inextricably intertwined with Defendants' designation decisions made pursuant to state law. The principles underlying *Burford* are implicated where, as here, the alleged federal violation is premised on "[a] claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors," and resolution of the claim could "disrupt the State's attempt

to ensure uniformity in the treatment of an 'essentially local problem.'" *New Orleans Pub. Serv.,*

*Inc.*, 491 U.S. at 362 (quoting *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 347

(1951)). *Burford* abstention is appropriate "when the claim is really state law in federal law

clothing." *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (citation

omitted). Furthermore, Plaintiffs' allegations that political considerations drove the designation

outcome and Defendants' "purported reasons for designating [their property] as a rural reserve

[were] pretextual" fair no better, as those claims also hinge on the plausibility of Defendants'

findings that Plaintiffs' property met the rural designation factors.[4] Am. Compl. ¶ 130.

　　Plaintiffs' as-applied federal constitutional claims present difficult questions of state and

local law that bear on policy issues of substantial local importance. Determining whether

Defendants had a rational basis for treating Plaintiffs' property differently than other similarly

situated landowners or applied the reservation designation statute and regulations to Plaintiffs in

an arbitrary and irrational manner would require extensive analysis of the state-law factors that

Defendants considered when making the reserve designations. These factors—which Defendants

applied as part of a comprehensive regional land use planning process—include whether the land

being considered: "[i]ncludes sufficient development capacity to support a healthy economy";

"[c]an be designed to preserve and enhance natural ecological systems"; "[c]an be developed in a

way that preserves important natural landscape features"; has "suitable soils where needed to

sustain long-term agricultural or forestry operations"; has sufficient "agricultural or forestry

---

[4] Plaintiffs' allegation that Defendants relied on political considerations is based on a statement
by a Multnomah County Commissioner, who noted that she took into consideration numerous
emails, letters, and phone calls she received from constituents asking "for more area to be
considered rural." Am. Compl. ¶ 64. Even if the Court did not abstain, it is not readily apparent
to the Court that considering public opinion in making reserves designations is impermissible.
Regardless, the "political considerations" that Plaintiffs allege were not specifically targeted at
Plaintiffs' properties or the rural reserve designation they received.

infrastructure in the area"; is "necessary to protect water quality or water quantity, such as streams, wetlands and riparian areas"; and "[p]rovides a sense of place for the region." O.A.R. 660-027-0050, 660-027-0060. This Court lacks the expertise and requisite familiarity to conduct such an inquiry and finds that permitting federal review of Plaintiffs' claims, and similar claims, would significantly disrupt Oregon's efforts to establish a coherent land use policy.

The Court acknowledges that more than 40 years ago, the Ninth Circuit noted that *Burford* abstention may be inapplicable to cases challenging zoning regulations or land use plans. *See Int'l Brotherhood of Elec. Workers., Loc. Union No. 1245 v. Pub. Serv. Comm'n of Nevada et al.*, 614 F.2d 206, 211 (9th Cir. 1980) (citing three prior land use cases where the Ninth Circuit reversed district court decisions to abstain under *Burford*).[5] In *Int'l Brotherhood*, the court held Burford abstention to be inappropriate where there was not clear evidence that the challenged action by a state of official "was issued in pursuit of an established policy or, if it was, that federal review would have the equivalent serious disruptive effects that Burford sought to avoid." 614 F.2d at 212. The court implied that federal court review of decisions made by state officials under an established policy could disrupt a comprehensive state scheme, but that no official policy was at issue in that case. *Id.* The Court here cannot determine whether Defendants followed official state policy in designating Plaintiffs' properties as rural reserve without analyzing and applying to Plaintiffs' properties the factors under O.A.R. 660-027-0050 and 660-027-0060. Such analysis by this Court would interfere with Oregon's authority to manage its own land use scheme.

_____

[5] Other circuit courts have stated otherwise. *See, e.g., Pomponio v. Fauquier Cnty. Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994) ("[W]e believe that cases involving questions of state and local land use and zoning law are a classic example of situations in which the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

This case can be distinguished from the three land use cases cited in *Int'l Brotherhood*. In all three cases, California had not concentrated challenges to land use decisions in particular state courts. *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 842 (9th Cir. 1979); *Isthmus Landowners Ass'n, Inc. v. State of California*, 601 F.2d 1087, 1091 (9th Cir. 1979); *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1079, 1096 (9th Cir. 1976). Importantly, in all three cases, the Ninth Circuit held that abstention was appropriate under the *Pullman* abstention doctrine rather than *Burford*. *Pullman* abstention is appropriate where resolving an issue of state or local law by state courts would make adjudicating a federal constitutional claim unnecessary. *Canton v. Spokane School Dist. No. 81*, 498 F.2d 840, 846 (citing *R.R. Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 498 (1941)). Each of the Ninth Circuit land use cases involved issues that were yet to be decided by state courts, the resolution of which could have alleviated the federal courts need to resolve constitutional issues. In each case, the Ninth Circuit held that the district court should stay the case and retain jurisdiction under *Pullman* pending adjudication of state issues in state court rather than dismiss the case under *Burford*. *Santa Fe Land Improvement Co.,* 596 F.2d at 841; *Isthmus Landowners Ass'n, Inc*., 601 F.2d at 1091; *Rancho Palos Verdes Corp*, 547 F.2d at 1095.

In contrast, Oregon has concentrated challenges to the reserves designation scheme in the Oregon Court of Appeals. That court has twice adjudicated the merits of the rural reserve designation for Plaintiffs' properties. *See Barkers Five I; Barkers Five II*. No further decision by a state court would help this Court decide whether to adjudicate the constitutional claims. The Court thus determines that *Burford* is the appropriate doctrine under which it should abstain from exercising its jurisdiction.

More recently, in an unpublished opinion, the Ninth Circuit held *Burford* abstention to be inappropriate in a challenge to a local zoning decision made under an Oregon land use scheme. *Wynnyk v. Jackson Cnty., Oregon*, 99 F. App'x 134, 135 (9th Cir. 2004). There, because of a zoning decision that adversely affected her property, the plaintiff brought both as-applied and facial constitutional claims. *Id.* The Ninth Circuit held that the district court erred by abstaining under *Burford* for all of plaintiff's claims. *Id.* This Court agrees that Burford abstention is not appropriate for facial constitutional claims, but it dismisses Plaintiffs' facial claims on other grounds. *See supra* Part II. Regarding the as-applied claims in *Wynnyk*, the Ninth Circuit found that adjudicating the plaintiff's claims would "not threaten the state's ability to follow a coherent land use policy." 99 F. App'x at 135. But in that case, the plaintiff applied for and was denied a conditional use permit that would have allowed a zoning variance. Her claims applied to her property alone. Here, in contrast, Plaintiffs seek invalidation of the rural reserve designation for their property that could impact all of Area 9B and all the reserves designations for the Portland metropolitan area. Metro and the counties do not make rural or urban reserve decisions for each property in isolation, but rather as part of a comprehensive scheme. This Court cannot grant the relief Plaintiffs seek for their as-applied constitutional claims without disrupting the entire scheme.

In addition, the Ninth Circuit in *Wynnyk* held that "[t]he district court correctly abstained from and dismissed [the plaintiff's] request for specific performance." *Id.* at 136. The court reasoned that "[t]he relief sought would potentially circumvent the procedures established under state land use law." *Id.* Because federal review of complex issues of state law would likely "disrupt state efforts to establish a coherent land use policy," *Burford* abstention as to the

injunctive relief the plaintiff sought was appropriate. *Id.* Likewise, the Court here abstains under *Burford* from adjudicating Plaintiffs' request for injunctive relief.

Finally, there is some ambiguity in the law as to whether *Burford* abstention applies to damages actions. *See Martinez v. Newport Beach City*, 125 F.3d 777, 783 (9th Cir. 1997), *overruled on other grounds by Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (noting "precedent in this area is very ambiguous"). In *Quackenbush*, the Supreme Court determined that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." 517 U.S. at 731. The Court noted that "certain classes of declaratory judgments" are within the discretionary category that is subject to dismissal on abstention principles, but in actions at law, the Court explained, abstention principles generally permit federal courts to enter an order that stays the adjudication, not one that dismisses the action altogether. *Id.* at 718-19. The Court, however, left open the possibility that a case could present "the sort of 'exceptional circumstance' in which *Burford* abstention . . . might be appropriate." *Id.* at 731. "[T]he Court explicitly left unanswered the question of what circumstances, if any, might permit the application of abstention doctrines to damages actions by declining to affirmatively state that such abstention is permissible, instead stating that 'we have not held that abstention principles are completely inapplicable in damages actions.'" *Martinez*, 125 F.3d at 782-83 (quoting *Quackenbush*, 517 U.S. at 730).

Notwithstanding the ambiguity of the Supreme Court's abstention jurisprudence, and despite Plaintiffs' prayer for money damages, this Court finds dismissal of Plaintiffs' damages claims under *Burford* is not contrary to *Quackenbush*. As the Eighth Circuit explained in a similar context:

> [A] close reading of [*Quackenbush*] indicates that a plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a § 1983

case where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states. In *Quackenbush*, the Court preserved and distinguished the very limited holding of *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115 (1981), where the Court dismissed a § 1983 damages case. The plaintiff in *Fair Assessment* sought damages from the allegedly unconstitutional application of a state tax scheme, but the Court dismissed the case, holding that the claim was akin to an action for declaratory relief because the damages sought could not be awarded without first, in effect, declaring that [application of] the state tax scheme was unconstitutional. Such a declaration would operate to suspend collection of the state taxes, a form of federal court interference previously rejected by the Court on principles of federalism. In *Quackenbush*, the Court distinguished but did not overrule this holding of *Fair Assessment*.

*Amerson v. Iowa*, 94 F.3d 510, 513 (8th Cir. 1996) (internal citations and quotation marks omitted).

This case is sufficiently analogous to *Fair Assessment* and *Amerson* to warrant extension of the *Burford* abstention doctrine to Plaintiffs' damages claims. Like *Amerson*, "most all of [Plaintiffs'] claims for relief are equitable in nature." 94 F.3d at 512. More importantly, Plaintiffs' claim for damages under § 1983 turns on whether Defendants' administration of the land reserves designation system violated Plaintiffs' constitutional rights: "In effect, the district court must first enter a declaratory judgment" regarding the constitutionality of Plaintiffs' reserves designation, which "would be fully as intrusive as the equitable actions that are barred by principles of comity." *Fair Assessment in Real Est. Ass'n, Inc.*, 454 U.S. at 113 (1981); *see also Amerson*, 94 F.3d at 513 (upholding district court's abstention under *Burford* because the plaintiff's "claims in effect require a preliminary declaration that the state court judgment . . . is invalid"). Because Plaintiffs' claims for equitable relief and damages implicate the same principles of federalism and comity that *Burford* is designed to protect, the Court abstains from exercising its jurisdiction over the entirety of those claims. Accordingly, Plaintiffs' as-applied

federal equal protection claims, as-applied procedural due process claims, and as-applied

substantive due process claims are dismissed.

## IV.    Claims under Oregon Constitution

In addition to equal protection claims under the Fourteenth Amendment to the U.S.

Constitution, Plaintiffs assert claims against Metro and County Defendants for violating the

equal protection guarantee under the Oregon Constitution. Am. Compl. ¶¶ 148, 171; OR. CONST.

art. I, § 20. This Court has supplemental subject matter jurisdiction over the state constitutional

claims under 28 U.S.C. § 1367(a) because the claims are so related to the federal claims that

"they form part of the same case or controversy." However, the Court has discretionary authority

to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it

has original jurisdiction." 28 U.S.C. § 1367(c)(3). When, as here, all claims arising under federal

law are dismissed in the early stages of a case, "the balance of factors to be considered under the

pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—weigh in

favor of declining to exercise jurisdiction over the remaining state law claims." *Carnegie–Mellon*

*Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988). As the only remaining claim after dismissing all

federal claims would require this Court to determine the validity of Oregon's complex land use

planning structure under the Oregon state constitution, the Court declines to exercise

supplemental jurisdiction.

///

///

///

///

## CONCLUSION

The Court GRANTS State, Metro, and County Defendants' Motions to Dismiss

[16][18][19].

IT IS SO ORDERED.


DATED:_____October 25, 2021____.


_____
MARCO A. HERNÁNDEZ
United States District Judge